UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GLORIA LOSADA-ZARATE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:10cv700 (MRK) |
| | : | |
| JAN GILBERT, | : | |
| | : | |
| Defendant. | : | |

# MEMORANDUM OF DECISION

Plaintiff Gloria Losada-Zarate, a psychologist, conducted consultative examinations for Connecticut's Bureau of Rehabilitation Services ("BRS") for years, until its Director of Support Services, Defendant Jan Gilbert, decided in February 2010 to stop utilizing Dr. Losada-Zarate's services. In this case, brought under 42 U.S.C. § 1983, Dr. Losada-Zarate alleges that Ms. Gilbert deprived her of property without providing due process, in violation of the Fourteenth Amendment. Ms. Gilbert has now moved for summary judgment. Because nothing in the record suggests that Dr. Losada-Zarate's relationship with BRS constituted a property right protectable under the Constitution, Ms. Gilbert's Motion for Summary Judgment [doc. # 36] is GRANTED.

## I.

"[P]roperly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

1

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the moving party—here, Ms. Gilbert—shows that no facts are contested, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown*, 654 F.3d at 358 (quotation marks omitted).

When considering a motion for summary judgment, the Court must resolve "all permissible inferences and credibility questions in favor of the party against whom judgment is sought." *Kayton v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010).

## II.

Dr. Losada-Zarate provided psychological and mental status evaluations for Connecticut Disability Determination Services, an office within the BRS, for a number of years—whether thirteen and a half, *see* Mot. for Summ. J. [doc. # 36-3] Ex. 2 (Gilbert Aff.) ¶ 8,

or "almost twenty," *see* Pl's Local R. 56 Statement [doc. # 37-1] at 4, makes no difference here. Dr. Losada-Zarate performed as many as ten examinations per week and was paid a fixed fee for each one. According to Dr. Losada-Zarate's deposition testimony, "[t]here was an implicit assumption that [her] involvement would continue indefinitely *unless told otherwise*. . . . There was no yearly contract to sign." Mot. for Summ. J. [doc. # 36-3] Ex. 2 (Losada-Zarate Dep.) at 72 (emphasis added).

BRS ceased referring examinations to Dr. Losada-Zarate in February 2010. There are disputes in the record as to whether BRS had good reason to stop working with Dr. Losada-Zarate and whether it provided her with notice of its decision. For the sake of this motion, the Court can assume that BRS had no reason to stop working with Dr. Losada-Zarate, that it provided her with no notice of its decision, and that no process was afforded whereby Dr. Losada-Zarate could contest the decision. Summary judgment in this case does not hinge on any of these questions, however. While the Court is sympathetic to Dr. Losada-Zarate's desire to be heard before losing a significant portion of her income, BRS's failure to give her that opportunity does not, in itself, violate the Constitution. The Fourteenth Amendment requires due process only when a person has a property interest in the benefit being terminated. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). This is the threshold question to which the Court now turns.

### III.

"To have a property interest in a benefit, a person . . . must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577; *see also Ansell v. D'Alesio*, 485 F. Supp. 2d 80, 86 (D. Conn. 2007) ("[A] unilateral expectation cannot establish a property interest protected by the Constitution, and this is true

regardless of whether the contract at issue is construed as a contract for services or an employment contract."). "In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause*." *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir. 1988) (emphasis in original). Contracts with the state give rise to constitutionally protected property interests only if a statute or the contract itself conditions the contract's termination, or if the contract or a person acting for the state explicitly or implicitly assures the plaintiff that the contractual relationship will continue. *See S & D*, 844 F.2d at 967-68; *Ansell*, 485 F. Supp. 2d at 86.

Dr. Losada-Zarate's claimed property interest in her contractual relationship with the state is complicated by the fact she does not have a copy of her contract and did not obtain one through discovery. *See* Mot. for Summ. J. [doc. # 36-3] Ex. 2 (Losada-Zarate Dep.) at 82 ("[T]here may be a contract in existence that I signed early on."); *id*. at 72 ("I believe . . . that I may have signed something for them, but I don't recall there being a copy given to me, and I don't have one in my possession."). Nonetheless, the Court accepts Dr. Losada-Zarate's contention that a contract did exist between the parties, even if it was an oral contract. *See* Br. in Opp. [doc. # 37] at 6.

What the Court cannot accept is Dr. Losada-Zarate's argument that "[s]ince . . . a contract . . . existed, the plaintiff had a property right of some sort in the continuation of that contract." *Id.* This simply does not follow. As the four decades of case law since *Roth* have made clear, a plaintiff needs more than a contract to have a property right; she needs a contract that can only be terminated upon certain limiting conditions.

In the record currently before the Court, Dr. Losada-Zarate has provided no evidence—and has not even alleged—that her relationship with the state could only be terminated for cause. Quite the opposite: in her deposition, Dr. Losada-Zarate claimed repeatedly that her work with the state would continue indefinitely "unless told otherwise." Mot. for Summ. J. [doc. # 36-3] Ex. 2 (Losada-Zarate Dep.) at 59, 72. As she said at one point: "The consulting relationship continues indefinitely unless told otherwise, *which is what occurred to me back in February of 2010.*" *Id.* at 59 (emphasis added). Given Dr. Losada-Zarate's own admission that her contract would continue until she was told otherwise, the fact that at some point she was "told otherwise" just shows that her contract was eventually terminated in the way the Parties envisioned.

At oral argument, Plaintiff's counsel argued that having worked with BRS for so long, Dr. Losada-Zarate had a reasonable expectation that BRS would provide some sort of notice or process before cutting off its relationship with her. No case law has been offered, however, to show that this expectation gives rise to any constitutional obligations. In fact, the Second Circuit has said in an analogous context that "[i]f the simple fact that [plaintiffs] worked at the Javits Center for a number of years gave them a claim of entitlement, nearly every government employee could claim a property interest in employment." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002). The Constitution does not protect longstanding employment or consulting practices, but rather "contracts with tenure provisions and the like, or . . . clearly implied promise[s] of continued employment." *Id.* at 100-01 (quotation marks omitted).

Dr. Losada-Zarate has not offered evidence of a tenure or "for cause" provision in her contract, or of a clearly implied promise of continued employment. Because she has not alleged or offered evidence to show anything more than a "unilateral expectation" of continued

5

contractual work with the state, *Roth*, 408 U.S. at 577, Dr. Losada-Zarate's constitutional due process claim must fail as a matter of law.

For this reason, the Court GRANTS Defendant's Motion for Summary Judgment [doc. # 36]. **The Clerk is directed to enter judgment in favor of the Defendant and close this file.**

**IT IS SO ORDERED.**

    /s/  Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: November 21, 2011.**